John W. HANEY, et al., Appellants,

v.

DUNCAN DEVELOPMENT, INC., et al., Appellees.

No. 8637.

Court of Civil Appeals of Texas, Beaumont.

June 25, 1981.

Rehearing Denied July 29, 1981.

Frank Caton, Houston, for appellants.

Walter L. Borgfeld and Robert T. Cain, Jr., Lufkin, for appellees.

KEITH, Justice.

Defendants below appeal from an adverse judgment entered after the trial court had sustained plaintiffs' motion for judgment after disregarding two jury findings. The appeal is presented upon a myriad of points raising many interesting legal theories only a few of which will require consideration in view of our action in reversing the judgment of the trial court.

Defendants owned a tract of land in Lufkin, heavily encumbered with a lien, upon which they desired to improve by the erection of townhouses thereon. After extensive studies, it was determined that five buildings, each containing several individual units, would be built on the land.

Through a series of complicated legal and financial transactions, plaintiffs began the construction of Building I in December, 1975, and it was substantially completed within a reasonable time, approximately six months.

Thereafter, from time to time, several controversies arose between the parties, all of which they sought to resolve in a new agreement entered into on August 12, 1977. The new contract required plaintiffs to construct the remaining four buildings but at an increased cost which included construction costs plus a fixed fee of 6% of such costs. Plaintiffs completed Buildings II and III in April, 1979, approximately nineteen months after the execution of the contract. Construction on Buildings IV and V was never commenced.

In Special Issue No. 9, the jury was asked to determine what would have been a reasonable time for plaintiffs to have commenced the construction of Buildings II, III, IV, and V,[1] to which the jury replied 30, 60, 90, and 120 days, respectively. A similar inquiry asking what was a reasonable time for plaintiffs to have completed the buildings was also submitted,[2] to which the jury found 9, 10, 11, and 12 months, respectively, for the several buildings. The jury noted the deficiency in this special issue by adding to its answer as shown in the margin.[3]

No objections were urged against the charge, but in the *Rule 301* motion plaintiffs advanced many reasons why such answers should be disregarded in the entry of the judgment. Among the objections were that the findings were immaterial "in that they are not related to any specific date or event from which they can be measured"; and, that there were no damage issues or findings which were related to such issues.

The two jury findings, even assuming that the date of commencement was August 12, 1977, did not form the base of any right to recover or of defense. The defendants did not plead delay as a defense nor did they seek to recover in their cross action for delay in completion.

Under *Tex.R.Civ.P. 301*, a jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial. *Simpson v. Phillips Pipe Line Co.*, 603 S.W.2d 307, 311 (Tex.Civ.App.—Beaumont 1980, writ ref'd n. r. e.), and authorities therein cited. Since the two issues under discussion constituted neither a defense to plaintiff's cause of action nor a ground of recovery, such issues should not have been submitted. *4 McDonald, Texas Civil Practice § 17.31, at 199 (1971 Rev.Vol.).*

In holding that the trial court did not err in disregarding the jury's answers to Special Issues Nos. 9 and 10, we do not review the factual base of such findings;[4] rather, our action is based upon our view that such issues, in the posture found in this record, were immaterial. Defendants' first point of error is overruled.

Several points of error presented by the defendants complain of the admission of testimony from plaintiffs' accountant as to cost of constructing the buildings. The only testimony as to such costs came from Ray Carswell, chief accountant for plaintiffs. He testified that Building I was given a number while Buildings II and III were assigned a single number. At the outset of his testimony, he said that as costs were incurred in construction, they were allocated to the particular numbered account for that building.

On voir dire examination, he testified that he had no personal knowledge of who might have prepared the invoices from the subcontractors or whether such persons had personal knowledge of the performance of

---

1. Special Issue No. 9: "Find from a preponderance of the evidence what would have been a reasonable period of time for Duncan Development, Inc., to have commenced the construction [of Buildings Nos. II, III, IV, and V]."

2. Special Issue No. 10 read: "Find from a preponderance of the evidence what would have been a reasonable period of time for Duncan Development, Inc., to have completed the construction of [Buildings Nos. II, III, IV, and V]."

3. The jury voluntarily added to their answer these words: "All four buildings should be completed at the end of twelve months from the signing of the contract dated August 12, 1977."

4. The rule is set out with clarity in *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 649–650 (Tex.1977).

any work on any building, or what work was done. Instead, he testified that the invoices from the subcontractors were received in his office and subsequently were paid.

There was no proof offered that the persons who prepared the subcontractors' invoices had personal knowledge of the information appearing thereon.

██ It is admitted by all parties that the records were voluminous and that the summary offered by Carswell was probably an accurate summary thereof taken from the computer records. However, defendants contend that even if the underlying invoices from the subcontractors had actually been in the courtroom and were offered into evidence, such would have been inadmissible. We agree that the trial court erred in admitting Carswell's summary of the construction costs.

At the outset of our discussion, it is well to bear in mind the statutory provision regarding business records, *Tex.Rev.Civ.Stat. Ann. art. 3737e (Supp.1980–81)*, provides for the admission in evidence of a record made in the ordinary course of business if:

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record."

It is readily apparent that the invoices of the subcontractors were *not* prepared by the employees or representatives of plaintiffs and that no such employees of plaintiffs had personal knowledge that work represented by the subcontractors had actually been done on the buildings involved. *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 891 (Tex.1969).

It is undisputed that the underlying records of plaintiffs were very voluminous,

filling several boxes. But, there was no attempt made to show that the underlying records (the invoices of the subcontractors) were admissible. About the best that can be gathered from Carswell's testimony is that the plaintiffs received and paid some invoices from several subcontractors. This facet of defendant's complaint is supported by the language used in *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80, 94 (Tex.1976).[5]

Plaintiffs seek to uphold their position by arguing that:

"[O]nce the invoices [from the subcontractors] were investigated and approved for payment by Duncan Development employees, and once payment was made and recorded in Duncan Development's business records, the invoices themselves became part of Duncan Development, Inc.'s business records.

"In any case, it must be remembered that this is a 'cost plus' contract. What plaintiffs were proving by Carswell's testimony were the costs which were incurred while constructing the buildings, not in itemization of the work done as set forth in the invoices . . . ."

We are not impressed by the argument. In logic, this fallacy is called *petitio principii*—begging the question.[6] The question before the Court was the cost of the construction of the several buildings, not what some subcontractor told plaintiff he would like to have.

██ We are of the opinion that the underlying records supporting Carswell's summary constituted hearsay and inadmissible evidence. *Skilleran & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 305 (Tex.1962); *Cooper Petroleum v. LaGloria Oil*, supra 436 S.W.2d at 891.

██ Carswell's testimony based upon the summaries of his books was the only testi-

---

5. Our record discloses that a photocopy of the *Black Lake* opinion was before the Court at the time of the voir dire examination and that counsel for the defendant tailored his objections to the evidence to conform to such holding.

6. The phrase is borrowed from *Faulder v. Hill*, 612 S.W.2d 512, 516 (Tex.Cr.App.1980), Roberts, J., dissenting.

mony supporting the jury's answers to Special Issues Nos. 1 and 2—those finding the construction costs and plaintiffs' overhead costs based thereon. Consequently, the judgment of the trial court must be reversed. *Cooper Petroleum v. LaGloria Oil*, supra.

Having found error requiring a reversal, we have examined the remaining challenges of the judgment and find none which would require a rendition of the judgment, and the complaints not addressed may not arise again upon a subsequent trial. The judgment of the trial court is reversed and the cause is remanded; it is so ordered.

REVERSED and REMANDED.