DUNCAN DEVELOPMENT, INC. et
al., Petitioners,

v.

John W. HANEY et al., Respondents.

No. C-685.

Supreme Court of Texas.

May 26, 1982.

Rehearing Denied July 14, 1982.

**812**

Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Robert T. Cain, Jr. and Walter L. Borgfeld, Jr., Lufkin, for petitioners.

Crain, Caton, James & Womble, Frank E. Caton, Houston, for respondents.

POPE, Justice.

Duncan Development, Inc. and R. H. Duncan, hereinafter called Duncan, sued John Haney and Craig Canon, hereinafter called Haney, to recover damages for breach of a construction contract. The trial court rendered judgment in favor of Duncan, the builder, for $444,207.80. The court of civil appeals reversed the judgment and remanded the cause, holding that Duncan's proof of damages constituted inadmissible hearsay under the Texas Business Records Act, Tex.Rev.Civ.Stat.Ann. art. 3737e. 626 S.W.2d 61. The central question is whether Duncan properly proved a predicate for the admissibility of a summary representing work, services and materials furnished to Duncan by his many subcontractors on the construction project. We hold that Duncan properly qualified the summary for admission into evidence and, accordingly, reverse the judgment of the court of civil appeals.

Haney and Canon in 1974 bought land in Lufkin and pledged it as security for a loan they obtained from a local bank. The pair decided to construct five townhouse buildings on the property and entered into an agreement with Duncan for financing the initial bank loan. In a subsequent arrangement, the parties agreed that Duncan would construct building one on a fixed price basis. After completion of this structure, disputes arose regarding payment, building specifications, and Duncan's workmanship. Duncan and Haney resolved those problems and then agreed that Duncan would construct the other four buildings for the price of Duncan's construction costs, plus normal overhead, plus a fee of six percent of the construction costs, with payment due on completion of each building. Duncan finished two more buildings some nineteen months after the parties entered into this last agreement. Haney refused to pay Duncan for the construction, and Duncan refused to build the last two structures. Duncan then filed this action.

The rather narrow question of admissibility here presented is whether Duncan, the general contractor, adequately laid a foundation to prove by summary the amount of costs evidenced by invoices submitted by some three dozen subcontractors. Haney urges that records of the subcontractors' invoices from which Duncan made its summary did not qualify for admission under article 3737e because no Duncan employee or representative with personal knowledge either prepared or transmitted the underlying information included in the invoices submitted by the subcontractors. The subcontractors, who won their jobs through competitive bidding, had submitted invoices to Duncan for payment of their work. Approximately one-third of the alleged construction costs for the two buildings stemmed from the subcontractors' work.

Business records are admissible in evidence upon proof that (1) the business is a regular, organized activity whether conducted for profit or not, (2) the record or memorandum was made in the regular course of business, (3) an employee or representative of the business with personal knowledge of the act, event, or condition, acting in the regular course of that business, made a record or memorandum of the act, event or condition or transmitted the information to be included in a record or memorandum, and (4) the record was made at or near the time of the act, event or condition. Tex.Rev.Civ.Stat.Ann. art. 3737e; see *University Savings & Loan Ass'n v. Security Lumber Co.*, 423 S.W.2d 287 (Tex.1967).

■ A summary of business records may be admitted into evidence upon proof of an additional predicate. This includes proof (1) that the records are voluminous, (2) they have been made available to the opponent

for a reasonable period of time to afford inspection and an opportunity for cross-examination, and (3) the supporting documents are themselves admissible in evidence. *Black Lake Pipeline Co. v. Union Construction Co.*, 538 S.W.2d 80, 93–94 (Tex.1976); *Cooper v. La Gloria Oil and Gas Co.*, 436 S.W.2d 889, 891 (Tex.1969).

Duncan satisfied the requirements that it prove the records were voluminous and accessible to the opponent. There were six or seven boxes that contained many time cards, invoices, and computer print-outs that represented work done, materials furnished and expenditures paid on the two buildings. Duncan made the records available to Haney's attorneys who actually examined the records on four occasions before trial and made copies of some records.

R. H. Duncan, president of Duncan Development Inc., Ray Carswell, Duncan's chief accountant, and Leon Morris, Duncan's construction superintendent, testified about Duncan's system of accounting. Mr. Duncan testified that subcontractors would mail their invoices to his office and that he would send the invoices to the corporation's bookkeeping department. Bookkeeping coded the invoices in order to identify the account and project on which the subcontractors had worked and then forwarded the invoices to Duncan's job supervisors at its construction sites.

Carswell, the chief accountant, testified that Duncan personnel receiving an invoice were required to confirm that the work charged on the invoice by the subcontractor had been completed. As noted and relied upon by the court of civil appeals, he also testified on voir dire that he had no personal knowledge of the persons who prepared the invoices or whether those persons had personal knowledge of the performance of any work on the building. In spite of that testimony, however, Duncan proved that its own people had knowledge of each item on the invoices.

Morris, the construction superintendent on the townhouse buildings, testified that he had personal knowledge of every subcontractor invoice that came across his desk on the job and would review each invoice before approving it for payment. Morris also stated that he would go to the building site once or twice a day. After the superintendent checked an invoice, Mr. Duncan related that it would be returned to bookkeeping. The bookkeeping department sent the approved invoices and other bills to a bank where a computer compiled the data, prepared monthly checks for payment in accordance with the submitted bills and invoices, and printed information that compared expenditures with bids and cost estimates on each project. The bank would send the checks and print-outs to Mr. Duncan, and he and Mr. Carswell would then review the print-outs for discrepancies. Mr. Duncan testified that if expenditures in a category varied from the estimate, he and Carswell would investigate to determine whether the variance was legitimate or the result of a mistake. If they discovered a mistake, Carswell testified that it would be corrected before an entry was made on the corporation's books.

The testimony of Duncan, Carswell, and Morris showed that the invoices, although originating with the subcontractors, became an integral part of Duncan's own records of the work, progress and costs on the Haney townhouse construction. *See Montclair Corp. v. Earl N. Lightfoot Paving Co.*, 417 S.W.2d 820, 825–26, 29 (Tex.Civ.App.—Houston 1967, writ ref'd n. r. e.). The testimony reveals that Duncan utilized a reliable method of confirming the accuracy of the submitted invoices through its site supervisors who had personal knowledge of activities at its construction sites. Morris, the superintendent on the project at issue, related that he had personal knowledge of the accuracy of each invoice and that he frequently visited the project.

The approved invoices provided the basis for Duncan's payments to its subcontractors and in fact formed part of the data base from which Duncan's project records originated and on which Duncan supervised its building operations. In light of the qualifying testimony, we hold that the invoices here became Duncan's record of its

subcontractors' activities and charges and qualified for admission into evidence under article 3737e: The records were made in the regular course of Duncan's business; in the regular course of Duncan's business and soon after receipt of the invoices, one of its employees who had personal knowledge of the subcontractors' work and charges transmitted such information to be included in Duncan's records. *See Roylex, Inc. v. Avco Community Developers, Inc.*, 559 S.W.2d 833 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). The summary used at trial, therefore, satisfied the requirements of article 3737e, and the trial court properly admitted its contents as substantive evidence of Duncan's construction costs.

■ In holding Duncan's summary admissible, we distinguish that line of cases represented by *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.), in which summaries, business records or memoranda did not qualify for admission into evidence under article 3737e because the proponents' business records contained records or memoranda prepared by third parties. *See Southwest Industries Investment Co. v. Scalf*, 604 S.W.2d 237 (Tex.Civ.App.—Dallas 1980, no writ); *Knollenberg v. Steel Tank Construction*, 600 S.W.2d 347 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *Wills v. R. G. Beneke & Co.*, 570 S.W.2d 79 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); *Matrix Computing, Inc. v. Davis*, 554 S.W.2d 288 (Tex.Civ.App.— Amarillo 1977, no writ); *Braswell Motor Freight Lines, Inc. v. Tetens*, 538 S.W.2d 224 (Tex.Civ.App.—Austin 1976, no writ); *Vahlsing Christina Corp. v. Ryman*, 512 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1974, no writ). In those cases none of the proponents of the various summaries, business records or memoranda demonstrated that their own employees or representatives in the regular course of their businesses knew of the events recorded on the third party documents. Here, Mr. Duncan, Mr. Carswell, and Mr. Morris testified that Duncan's supervisors in the regular course of their responsibilities checked to see whether the subcontractor's work had been performed and whether the submitted invoices were proper for payment. Duncan's site supervisor for buildings two and three testified that he had personal knowledge of the invoices crossing his desk for approval. Thus, not only did Duncan incorporate the invoices into its own records, it also fulfilled article 3737e, § 1(b)'s requirement that its employee has personal knowledge—the missing element in *Dal-Mac* and the other above cited cases.

■ Haney filed a separate application for writ of error as well as several crosspoints in response to Duncan's application. After examining all these various points, we find it necessary to address only one. The final construction contract between the parties provided that Duncan would construct the final four buildings for the price of "its construction costs plus normal overhead plus a fee of 6% of the construction cost." In awarding Duncan damages, the trial court figured the contract price of buildings two and three with the formula, construction cost *and* normal overhead plus six percent of that total. The trial court's formula allows Duncan to receive a six percent fee on its normal overhead; the parties' final agreement allows Duncan to collect the six percent fee only on the basis of its construction costs. Thus, the damages due Duncan should be reduced by $3,916.46; the pre-judgment interest awarded Duncan should, accordingly, be reduced by $516.91.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court, as modified, is affirmed.