**James and Maggie FITZGERALD, et al., Appellant,**

v.

**Denis C. LaFRENIERE, et al., Appellee.**

**No. 13–82–072–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1983.

Rehearing Denied Oct. 6, 1983.

Richard B. Stone, Corpus Christi, for appellant.

Olan A. Keeter, Toufic Nicolas, Corpus Christi, for appellee.

Before BISSETT, YOUNG, and UTTER, JJ.

## OPINION

YOUNG, Justice.

This dispute arose between condominium owners and the owner of the condominium project over the alleged failure of the owner of the condominium project to pay assessments for units he owned. James and Maggie Fitzgerald and three other owners of the condominiums in the Cliff House in Corpus Christi brought suit individually and as members of C–H Council of Co-Owners Inc., the corporation charged with management of the condominium. The plaintiffs claimed, among other things, that Denis LaFreniere, owner of more than 60% of the condominium units, had failed to pay $163,481.15 in delinquent assessments. LaFreniere alleged that he paid an even greater amount to defray the condominium's expenses and was entitled to an offset. He also filed a counterclaim for the amount of overpayments. Special issues were submitted to the jury, and the trial court entered a judgment denying recovery for all parties. From that judgment the Fitzgeralds and other owners appeal. We reverse.

The evidence shows that LaFreniere owned the Cliff House when it was an apartment complex. Although he was totally inexperienced in condominium ownership, he decided to convert the Cliff House to condominiums. This was done in December of 1977. Although the Cliff House consists of 65 units, LaFreniere only sold two or three units in 1978. He gradually sold a few more, but still owned approximately 63% of the units by the time of trial.

Because LaFreniere owned so many units, daily management of the Cliff House fell to him. He was apparently unfamiliar with corporate operations and did not keep complete records. Instead of paying his share of assessments and using this fund to pay the condominium's expenses, LaFreniere paid the expenses out of his own funds. While he admitted that he owned $129,000.00 in assessments, he claimed that he paid more than that amount in bills on behalf of the project. In order to substantiate this claim, he introduced records whose admissibility was zealously contested at trial.

The appellants proved their damage claims with the testimony of Scott Turner, a certified public accountant. Turner prepared a summary depicting the assessments owed by LaFreniere. Since the declaration of condominium provides that beginning ten days after the assessments are due,

owners who fail to pay are to be charged interest on those amounts at the rate of 10%, Turner also included interest calculations in his summary. From January of 1978 to June of 1981, according to Turner's calculations, LaFreniere owed $162,130.60 in assessments and $1,350.55 in interest. The payments which the appellee did make were used to defray interest before principal as provided by the condominium agreement.

In response to the special issues numbers 1 and 5 the jury found as follows:

### "SPECIAL ISSUE NO. 1

Find from a preponderance of the evidence the amount of money, if any, that Denis C. LaFreniere is delinquent to the C–H Council of Co-Owners, Inc. for assessments and interest on assessments for the period of time from January 1, 1978 through June 30, 1981.

In answering this issue, do not consider any amount of money, if any, that Denis C. LaFreniere claims to have paid, or may have paid, if any, on behalf of the C–H Council of Co-Owners, Inc. for condominium common expenses. Answer separately in Dollars and Cents with respect to each of the following:
(a) Delinquent assessments: $129,000
(b) Interest on delinquent assessments: $33,000

\*    \*    \*    \*    \*    \*

### SPECIAL ISSUE NO. 5

What amount of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate Denis C. LaFreniere, individually, and LaFreniere Corp. for bills, expenses, labor and materials, upkeep maintenance, service and/or repairs at the Cliff House, paid by Denis C. LaFreniere and LaFreniere Corp. for the benefit of C–H Council of Co-Owners, Inc., during the period from January 1, 1978 to September 30, 1980?

Answer in Dollars and Cents, if any, at the end of the following:
(a) Operating expenses: $64,883
(b) Salaries: $56,400
(c) Payroll taxes: $3,086
(d) Insurance: $11,434"

In their first point of error appellants complain of the action of the trial court in rendering a "take-nothing" judgment against them in light of the jurys findings in special issues No. 1 and 5. The appellants have added the answers to special issue ($162,000.00) and special issue No. 5 ($135,803.00) and taken the difference between these two. That difference, $26,-197.00, is what they claim should have been awarded to them by the trial court. In the alternative, the appellants contend the awards should have been even larger because of the inadmissibility of some of the appellants offset evidence. We shall address this argument under appellants second point of error and turn now to the appellants claims that they should have been awarded judgment for at least $26,-197.00.

In order to deny a recovery to the appellants, the trial court evidently disregarded a portion of the verdict. The appellee requested the court to disregard the jury's answers to special issue 1b. In its judgment, the trial court recited that it had considered this motion in arriving at its decision.

■ Rule 301, Tex.R.Civ.P. provides that the trial court may disregard any special issue jury finding that has no support in the evidence. The only evidence concerning the question of the amount of interest owed by appellee comes from two sources. The first is from the condominium declaration itself at page 17, wherein interest at the rate of 10% is to be charged on all assessments not paid within 10 days of the due date. The second source is the testimony and documentary evidence in the form of a chart prepared by appellants' witness Turner. As previously pointed out this testimony and supporting exhibits proved a maximum interest owed by appellee of $1,350.55. In light of the jury finding that $33,000.00 in interest was owed by appellee, we must assume that the trial judge correctly disregarded the jury's response to this issue. Therefore, when the $33,000.00 interest

award is removed from the assessments owed calculations, appellants were no longer entitled to any recovery based on the remaining jury findings. Appellants' first point of error is overruled.

Of the remaining eight points of error, six challenge the admissibility of evidence to prove the amount of the offset found by the jury in special issue 5. The evidence consisted of LaFreniere's testimony and of his trial exhibits 10–45. Although the appellants complain of these exhibits, they admit in their brief that they have no complaint about the $64,833.00 found by the jury under special issue 5a to be the amount of operating expenses paid by LaFreniere. Consequently, we will view this statement in the appellants' brief as an uncontroverted fact and we will accept it as true. Rule 419, Tex.R.Civ.P.

In their second, fourth, fifth and sixth points the appellants focus their attention on special issues 5b, 5c and 5d. They claim that there was no competent evidence to support the jury's findings since the defense exhibits 10–45 were inadmissible hearsay. Each time the appellee offered these exhibits, the appellants objected that he had failed to comply with the business records exception to the hearsay rule. The business record exception, Tex.Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp.1982) provides;

"Competence of record as evidence

Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

A review of the record reveals that the evidence complained of is not a series of separate documents but rather a series of folders containing a myriad of documents representing bills paid by appellee for each month from January 1978 through August of 1980. Each of these exhibits contains cancelled checks reportedly representing payments for the various invoices contained in each file. The several exhibits contain hundreds of separate documents. As a predicate to the admission of all these documents appellee testified that all these documents were kept in the ordinary course of his business and each was made at the time of each transaction. Appellee subsequently testified that each check was drawn on his personal and corporate accounts, that each check was issued in the regular course of business at or about the time the services paid for by check were performed, and that the checks were kept in regular course of business. Based on this predicate the trial judge overruled appellants' timely objections to the evidence and admitted exhibits 10–45.

The central question is whether appellee properly proved a predicate for the admissibility of what is otherwise hearsay evidence. We hold that he did not. The recent opinion in *Duncan Development Inc. v. Haney*, 634 S.W.2d 811 (Tex.1982) is illustrative of the proper method by which such evidence should be admitted. In *Duncan Development*, it was held that where summaries of voluminous documents are sought to be admitted into evidence, and where some of the underlying documents from which summaries were prepared were made by third parties, the summaries will be admissible where it is shown that an employee of the party seeking to have documents admitted had personal knowledge of the third party documents. In *Duncan Development*, the president of the corporation, its chief accountant, and the individual responsible for reviewing the documents in question all testified concerning the corporations record keeping procedures. Most importantly the individual who reviewed the third party documents testified he had per-

sonal knowledge of every invoice in question. The combined testimony of these witnesses showed that the third party documents became an integral part of the records of the corporation and it was held that this predicate was sufficient to permit the admission of the documents into the evidence under Article 3737e.

In this case the appellees' predicate falls far short of the test established in *Duncan Development.* There is no testimony at all concerning any personal knowledge by appellee or any of his employees concerning the contents of the documents sought to be admitted. Absent the qualifying testimony required by *Duncan Development* the rule applies that business records will not qualify for admission under Article 3737e because they contain records or memorandums prepared by third parties. See *Southwest Industries Investment Co. v. Scalf,* 604 S.W.2d 233 (Tex.Civ.App.—Dallas 1980 no writ); *Knollenberg v. Steel Tank Construction,* 600 S.W.2d 347 (Tex.Civ.App.—Houston [1st District] 1980 no writ); *Wills v. R.G. Beneke & Company,* 570 S.W.2d 79 (Tex.Civ.App.—Dallas 1978 writ ref'd n.r.e.); *Matrix Computing Inc. v. Davis,* 554 S.W.2d 288 (Tex.Civ.App.—Amarillo 1977 no writ); *Braswell Motor Freight Inc. v. Tetens,* 538 S.W.2d 224 (Tex.Civ.App.—Austin 1976 no writ); *Vahlsing Christina Corp. v. Ryman Well Service, Inc.,* 512 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1974, no writ).

Having determined that the defendant's exhibits 10 through 45 are not admissible, we must next determine if any other evidence exists which will support the jury's findings on special issues 5b, 5c, 5d. We do not find any other evidence to support the jury's answers. Appellee did testify generally concerning his expenditures on the behalf of appellants. This testimony is not based on personal knowledge, however, but rather on the inadmissible exhibits 10 through 45. There is no evidence appellee had any knowledge of the expenditures independent of the questionable exhibits. Appellee also cites us to defendant Pope's exhibit 1 which is a summary of the expenditures represented by exhibits 10 through 45 which was prepared by appellee's accountant. This document was admitted into evidence only for the purpose of showing that it had been given to the appellants at a board meeting. It was not admitted for the purpose of showing the truthfulness of its contents. Since appellee's counsel failed to re-offer the document for proof of its contents at the time his accountant testified from the document, it remains subject to its limited tender and was, therefore, no evidence of any expenditures by appellee. Finding no admissible evidence to support the jury's answers to special issues 5b, 5c, and 5d, we sustain appellants' second, fourth, fifth and sixth points of error.

In their eighth point of error, the appellants again complain of special issue 5. Their objection is that no offset should be allowed for expenses paid by the LaFreniere Corporation since it was not a party to the suit. The evidence showed that some of the expenses had been paid with checks from LaFreniere's individual account and some with checks from the LaFreniere corporate account. LaFreniere was the sole shareholder of the LaFreniere Corporation, which was dissolved before trial. Because the appellants failed to submit an issue in the form which they contend was correct as required by Rule 277, Tex.R.Civ.P., they waived error.

In their ninth point of error the appellants dispute the finding of "zero" in answer to special issue 2 inquiring about the attorney's fees incurred by them in this litigation. Section 7.05 of the condominium declaration provides that the board, council or any apartment owner shall have the right to enforce by any proceeding at law the provisions of the declaration. Section 4.02(C) provides that if the council shall incur legal expenses, including attorney's fees and court costs, to enforce any rights of the council against an apartment owner then the apartment owner shall be liable to the council for such expenses. Therefore, a contractual right to attorney's fees is established by the condominium declaration.

Appellants' attorney testified that reasonable attorney's fees through trial was $26,156.23 plus an additional $3,500.00 if an appeal was taken to the Court of Appeals and an additional $2,500.00 if an appeal was perfected to the Texas Supreme Court. Appellee's only objection to this evidence was that there was no attempt to segregate the fees incurred against him from those against the other defendants.

In reviewing appellants' ninth point of error we will follow the familiar rules for determining the legal and factual sufficiency of the evidence which have been established by our Supreme Court. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). We find the jury's answer to special issue 2 is against the great weight and preponderance of the evidence. Noting that an award of attorney's fees is a fact issue for the jury, *International Security Life Insurance Co. v. Spray*, 468 S.W.2d 347 (Tex. 1971), we sustain appellants' ninth point of error. We have considered appellants' third and seventh points and overrule them.

The judgment of the trial is reversed, and the cause is remanded for a new trial.