**RESOLUTION TRUST CORPORATION,
Plaintiff–Counter–Defendant–
Appellee,**

v.

**Charles McCRORY, et al., Defendants–
Counter–Plaintiffs–Appellants.**

**No. 91–1079.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1992.

Rehearing and Rehearing En Banc
Denied Feb. 11, 1992.

Hubert A. Crouch, III, Gardere & Wynne, Dallas, Tex., for defendants-counter-plaintiffs-appellants.

Benjamin H. Davidson, II, W. Alan Wright, Haynes & Boone, Dallas, Tex., for plaintiff-counter-defendant-appellee.

Before POLITZ, KING and JOHNSON, Circuit Judges.

KING, Circuit Judge:

The defendants in this case appeal the summary judgment entered by the district court in favor of Sunbelt Savings, FSB (Sunbelt)—a failed savings bank whose successor is under the conservatorship of the Resolution Trust Corporation (RTC). Sunbelt brought this action on a note made by two of the defendants. The other defendants (who assumed all obligations under the note in a later transaction) defended on the basis of a letter agreement with Sunbelt which limits their liability. The district court entered summary judgment based on the *D'Oench, Duhme* doctrine, because the letter agreement was not found in Sunbelt's files. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942).

After the district court's judgment had been appealed to this court, RTC was substituted as conservator for Sunbelt's successor. On appeal, RTC argues that the district court properly applied *D'Oench, Duhme* to this case, and argues alternatively that 12 U.S.C. § 1823(e) bars any claims or defenses based on the letter agreement. We agree that § 1823(e) applies to this case, and affirm the district court's judgment on that ground. We do not reach the question of whether *D'Oench, Duhme* would require us to come to the same conclusion.

## I. BACKGROUND

In 1986 Charles and Margaret McCrory executed a promissory note payable to Sunbelt's predecessor (Old Sunbelt) for $6.8 million. This note was secured by a deed of trust lien on North Park Terrace apartments. In 1987 the McCrorys and Old Sunbelt entered into another transaction (the assumption agreement) by which title to the apartments was transferred from the McCrorys to North Park Terrace, Ltd. (NPT), a Florida limited partnership. The general partners of NPT were Charles McCrory and First Florida Management Association (FFMA).[1] Walter McCrory and Thomas Ryan are general partners of FFMA. According to the terms of the assumption agreement, NPT assumed all of the original obligations of the McCrorys

---

1. In 1989 NPT filed for voluntary bankruptcy under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–1174, and is consequently not a party to this litigation.

under the original note. The assumption agreement also provided that the McCrorys remained liable for their obligations under the note notwithstanding the assumption of those obligations by NPT. Simultaneously with the execution of the assumption agreement, however, Old Sunbelt executed a letter agreement limiting the liability of FFMA, along with its general partners Walter McCrory and Thomas Ryan, to the extent of their interest in NPT. Neither the executed letter agreement nor any copy of it was included in Old Sunbelt's files.[2] A copy of the letter agreement was retained in the "draft (documents)" file of the attorney who handled the closing for Old Sunbelt.

In 1988 the Federal Home Loan Bank Board declared Old Sunbelt insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) receiver. FSLIC and Sunbelt then executed an acquisition agreement which transferred certain assets, including the original note and the assumption agreement, from FSLIC to Sunbelt. Following August 1988, the McCrorys and NPT failed to make the payments required under the note and assumption agreement. Sunbelt then accelerated the indebtedness under the note, making all unpaid amounts immediately due. To recover the indebtedness under the note, Sunbelt instituted this lawsuit.

■ The district court entered summary judgment in favor of Sunbelt, finding that

the absence of the letter agreement from Sunbelt's files entitled Sunbelt to the protection of the *D'Oench, Duhme* doctrine.[3] In doing so, the district court found that FFMA, and its general partners Walter McCrory and Thomas Ryan, could not rely on the defense that their liability was limited by the letter agreement, since that defense was grounded entirely in an agreement which was not contained in Old Sunbelt's records.[4]

After entry of final summary judgment by the district court, the Office of Thrift Supervision (OTS) declared Sunbelt insolvent and appointed the RTC receiver. Another acquisition agreement, this time between RTC and Sunbelt Federal Savings, FSB (Sunbelt Federal), transferred certain assets, including the final judgment entered in the district court on the note and assumption agreement, from RTC to Sunbelt Federal. On the same day, OTS placed Sunbelt Federal into conservatorship and appointed RTC conservator. RTC consequently succeeded to all rights of Sunbelt Federal, including the right to collect the final judgment in this case. *See* 12 U.S.C. §§ 1441a(b)(4) and 1821(d)(2)(B)(ii). During the course of this appeal, we substituted RTC for Sunbelt as the plaintiff-appellee.

## II. STANDARD OF REVIEW

■ We review the entry of summary judgment de novo, applying the same sub-

---

**2.** Two documents in Old Sunbelt's files referred to the letter agreement, but did not disclose the limitation of liability. There is no record of the letter agreement or the liability limitation in the minutes of the loan committee. An official of Old Sunbelt testified that the loan committee neither considered nor approved the assumption agreement, since the transaction was not considered a restructuring of the original note. The official testified that the chairman of the senior loan committee approved the transaction, including the limitation of liability. *Cf.* 12 U.S.C. § 1823(e)(3).

**3.** Sunbelt was authorized to invoke the *D'Oench, Duhme* doctrine in its own behalf as a bridge bank which was an assignee of FSLIC. *See Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754–55 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

**4.** The district court also entered summary judgment against Charles and Margaret McCrory, noting that their defenses, based on claims of breach of contract and usurious interest, had been expressly released in the assumption agreement. The McCrorys had argued that the consideration for such release was Old Sunbelt's promise (in the letter agreement) to limit the liability of FFMA and its general partners Walter McCrory and Thomas Ryan. Since that promise had been broken, the McCrorys contended that their release was invalid for lack of consideration. The district court found adequate consideration on the face of the assumption agreement for the release, and held that the McCrorys consequently cannot rely on the letter agreement as consideration. Although they filed a notice of appeal, the McCrorys have not filed any independent briefs; neither they nor the other defendants have presented any arguments challenging this aspect of the district court's ruling.

stantive test as the district court. *FDIC v. Hamilton*, 939 F.2d 1225, 1227 (5th Cir. 1991). Summary judgment is appropriate if, viewing the filings in the light most favorable to the nonmoving party, they "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hamilton*, 939 F.2d at 1227.

## III. DISCUSSION

Although the district court decided the parties' summary judgment motions based on the *D'Oench, Duhme* doctrine, RTC argues two grounds for affirmance. First, RTC contends that the district court properly applied *D'Oench, Duhme* to the facts of this case. Alternatively, RTC invokes § 1823(e) in defense of the district court's ruling.

Section 1823(e) prohibits claims or defenses based on an agreement unless that agreement, among other requirements, "has been, continuously, from the time of execution, an official record of the depository institution." 12 U.S.C. § 1823(e)(4). These provisions initially applied only to the Federal Deposit Insurance Corporation (FDIC), but Congress made them applicable to the RTC in 1989. *See* 12 U.S.C. § 1441a(b)(4); *RTC v. Murray*, 935 F.2d 89, 93–94 (5th Cir.1991).

█ RTC raises this argument for the first time on appeal, as it was not a party to the proceedings in the district court and the argument based on § 1823(e) was not available to Sunbelt. *See FSLIC v. Griffin*, 935 F.2d 691, 698 (5th Cir.1991), *petition for cert. filed* (Nov. 18, 1991); *Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.), *cert. denied*, —— U.S. ——; 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). In this case, RTC invokes the argument as an alternative justification for affirmance of the district court's judgment; RTC does not ask us to reverse the district court on the basis of an argument not presented to that court.

We note that, when the district court's judgment establishes that an asset is void, federal regulators appointed after the entry of judgment have not been allowed to assert arguments based on *D'Oench, Duhme* and § 1823(e) for the first time on appeal as an attempt to reverse the district court's judgment. *See Thurman v. FDIC*, 889 F.2d 1441, 1447 (5th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 275 (5th Cir.1989).[5] In this case, however, the final judgment in favor of Sunbelt represented an asset of Sunbelt which RTC acquired when it stepped in as conservator of Sunbelt Federal. In such a situation, we have permitted federal regulators to assert their special defenses for the first time on appeal. *See Union Fed. Bank v. Minyard*, 919 F.2d 335, 336 (5th Cir.1990); *see also Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1512 (11th Cir.1991); *FDIC v. Castle*, 781 F.2d 1101 (5th Cir.1986). In *Minyard*, we emphasized that the federal regulator had no opportunity to raise its special defense in the trial court, and implied that it should not be penalized on appeal for that lack of opportunity. 919 F.2d at 336; *accord Baumann*, 934 F.2d at 1512–13. Under these circumstances, it is not improper for us to consider the argument for the first time on appeal.

█ "Congress erected a stout barrier in 12 U.S.C. § 1823(e)." *FDIC v. Cardinal Oil Well Serv. Co.*, 837 F.2d 1369, 1372 (5th Cir.1988). That barrier forbids defenses based on an agreement with a failed depository institution unless the agreement meets all four criteria enumerated in § 1823(e). One of the criteria is the requirement that the agreement "has been,

---

**5.** This case is unique in that Sunbelt could and did raise the *D'Oench, Duhme* doctrine in the district court, but could not raise the § 1823(e) argument there. Since the two arguments are so closely related, *see Murray*, 935 F.2d at 93 n. 3, our conclusion does little violence to the district court's reasoning. *Compare Beighley v. FDIC*, 868 F.2d 776, 783–84 (5th Cir.1989) (affirming district court's judgment, which rested on § 1823, under *D'Oench, Duhme* since § 1823 was unavailable to FDIC as receiver), *with Thurman*, 889 F.2d at 1447 (at time judgment was entered, five days before receivership was created, no party to the case could have asserted the special defenses).

continuously, from the time of its execution, an official record of the depository institution." 12 U.S.C. § 1823(e)(4).

In this case, the defendants argue that the letter agreement's presence in the files of the bank's attorney, who kept offices in the same building and on the same floor, is sufficient to meet the requirement. We have found no cases which aid our interpretation of the term "official record of the depository institution." We do not now seek to promulgate any comprehensive definition of that term. We merely hold that the "draft (documents)" file of the bank's outside attorney does not constitute "an official record of the depository institution."

"One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Often, such an evaluation must be done literally overnight. *See id.* For this reason, the Supreme Court has been unwilling "to engraft an equitable exception upon the plain terms of the statute." *Id.* at 94, 108 S.Ct. at 403. Though they deny it, this is exactly what the defendants have asked us to do.[6] We too must decline the request and hew closely to the "plain terms of the statute."

The defendants and RTC disagree over the correctness of the district court's interpretation of the *D'Oench, Duhme* doctrine, particularly regarding the existence of a scheme or arrangement likely to mislead federal regulators. Section 1823(e), however, provides a clear statutory standard which is dispositive of the outcome in this case. Since we hold that § 1823(e) provides an adequate basis for affirmance of the district court's summary judgment, we do not reach the thornier question of whether the *D'Oench, Duhme* doctrine would compel the same result. *See, e.g., Bowen v. FDIC*, 915 F.2d 1013, 1016 (5th Cir.1990) (characterizing the doctrine as "the dungeon of *Duhme*").

6. They argue that affirmance in this case would create a manifest injustice since all parties to the transaction agree that the liability limitation

## IV. CONCLUSION

Accordingly, the judgment of the district court is AFFIRMED under the reasoning set forth above.

was a legitimate part of the assumption agreement.