**Dudley W. STILES, Appellant,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver of Hallmark Savings & Loan Association, F.A., Appellee.**

No. 05–91–00894–CV.

Court of Appeals of Texas, Dallas.

April 22, 1992.

Rehearing Denied June 3, 1992.

Stephen A. Coke, Richard W. Winn, Dallas, for appellant.

Keith B. Cummiskey, William N. Radford, Dallas, for appellee.

Before STEWART, BURNETT and CHAPMAN, JJ.

OPINION

STEWART, Justice.

Dudley W. Stiles appeals from a summary judgment in favor of the Resolution Trust Corporation (RTC), as receiver of Hallmark Savings and Loan Association, in its suit to recover the balance due on a promissory note. Stiles asserts eleven points of error on appeal, contending that

1. On appeal, Stiles addresses only release, ac-

the trial court erred in granting summary judgment. We affirm the trial court's judgment.

In May 1988, Stiles executed a $500,000 revolving-line-of-credit note (the note) payable to Hallmark Savings Association (Old Hallmark). The note matured on May 2, 1989. On July 26, 1989, the Federal Home Loan Bank Board declared Old Hallmark insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as its receiver. FSLIC and Hallmark Savings and Loan Association, F.A. (New Hallmark) entered an acquisition agreement pursuant to which New Hallmark acquired the note. On September 28, 1989, New Hallmark notified Stiles in writing that the note was in default and demanded immediate payment of all principal and interest due.

On October 24, 1989, New Hallmark filed this suit to collect the amount allegedly due on the note. Stiles' original answer asserted the defenses of release, accord and satisfaction, payment, and estoppel.[1] On May 16, 1990, RTC was appointed receiver for New Hallmark. On September 17, 1990, RTC filed its plea in intervention, stating that it had been appointed receiver of New Hallmark and that, as receiver, it was responsible for pursuing the claims originally asserted by New Hallmark in this suit. A few days later, RTC filed its motion for summary judgment, alleging that Stiles executed the note, that it was owner and holder of the note, that the note was in default, that demand had been made for all amounts due, and that an amount remained due. Stiles' response alleged that issues remained as to: (1) whether he had a fair opportunity to conduct discovery of the books and records of Old Hallmark; (2) whether the indebtedness was written off Old Hallmark's books and records; (3) whether Old Hallmark's board of directors or loan committee approved removal of the indebtedness, which approval is reflected in the minutes of the board or committee; (4) whether Old Hallmark has an official record of the release of the indebtedness set forth in the motion; (5) whether he had

cord and satisfaction, and payment.

been released from the cause of action; (6) whether RTC's cause of action is barred by accord and satisfaction; (7) whether RTC's predecessor in interest waived its rights under the note; (8) whether RTC is estopped to recover under the note; and (9) whether he paid the indebtedness.

On November 28, 1990, Stiles filed his first request for production of documents. RTC produced, among other things, a June 22, 1989 memorandum in which Wayne Ikerd, a bank employee, stated, "This loan was written off in the Deerfield Settlement Agreement." On February 20, 1991, Stiles filed motions for continuance and to compel. He complained that RTC refused to produce internal accounting records, which Stiles asserted might show that the note had been written off in Old Hallmark's books, and refused voluntarily to produce Ikerd for deposition.

On March 20, 1991, the trial court rendered summary judgment for RTC on the note. It denied Stiles' motions to compel and for continuance on April 23, 1991. Stiles then perfected this appeal.

Stiles asserts eleven points of error, generally complaining that: (1) the trial court erred in granting RTC's motion for summary judgment on grounds not alleged in the motion; (2) RTC was not entitled to assert holder-in-due-course status on the note; (3) *D'Oench*[2] and section 1823(e) of Title 12 of the United States Code[3] are inapplicable because the note was extinguished and satisfied before RTC acquired the alleged asset; (4) the trial court erred in granting RTC's motion for summary judgment and in denying his motions for continuance and to compel because (a) he did not have a fair opportunity to conduct discovery of the books and records of Old Hallmark and to present affidavit facts essential to justify his opposition to RTC's motion and (b) Ikerd's affidavit was the controverted testimony of an interested witness which was not credible and free from contradictions and inconsistencies; and (5) the trial court erred in granting summary judgment because he raised fact issues as to whether the note was paid, satisfied, and extinguished.

■■■ In reviewing a summary-judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, the plaintiff as movant must conclusively prove its entitlement to prevail on each element of its cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). The plaintiff is under no obligation to negate affirmative defenses. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). The mere pleading of an affirmative defense does not prevent the rendition of summary judgment for a plaintiff who has established conclusively the nonexistence of disputed fact issues in its claim for relief. *Clark v. Dedina*, 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). To show a disputed fact issue that will preclude the rendition of summary judgment for the plaintiff, the defendant must offer summary-judgment proof on each element of at least one of the affirmative defenses it has pleaded. *Seale v. Nichols*, 505 S.W.2d 251 (Tex.1974); *Clark*, 658 S.W.2d at 296.

■■■ To prove its entitlement to summary judgment for the balance due on the

2. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (obligor who lends himself to a scheme or arrangement likely to mislead bank examiners may not assert against FDIC any part of an agreement that might diminish value of written loan obligation).

3. 12 U.S.C. § 1823(e) (1989), hereinafter section 1823(e).

note, RTC was required to prove conclusively: (1) the note in question; (2) that Stiles signed the note; (3) that it was the legal owner and holder of the note; and (4) that a certain balance was due on the note. *Rea v. Sunbelt Sav.*, 822 S.W.2d 370, 372 (Tex.App.—Dallas 1991, no writ); *Clark*, 658 S.W.2d at 295. To support its summary-judgment motion, RTC submitted Ikerd's affidavit with the note attached. Stiles admitted execution of the note. Ikerd's affidavits and its exhibits establish that RTC was owner and holder of the note; that $608,460.14 was due on the note as of September 15, 1990; and that interest accrued at the rate of $177.92 per day. This evidence proved RTC's entitlement to recover the unpaid balance of the note as a matter of law. *Rea*, 822 S.W.2d at 372. Once RTC established its entitlement to summary judgment, Stiles was required to raise an issue of fact on every element of at least one of his affirmative defenses.

Stiles argues that the trial court erred in granting RTC's motion for summary judgment because RTC failed to specify in any written pleading that it intended to rely on *D'Oench*, section 1823(e), or the federal-holder-in-due-course doctrine as specific grounds for summary judgment. *See* TEX. R.CIV.P. 166a(c). RTC states in its brief that the trial court did not apply the federal-holder-in-due-course doctrine in granting RTC's summary-judgment motion because, at the time judgment was rendered, the doctrine was inapplicable to the indebtedness in this case. *See Sunbelt Sav., FSB, Dallas v. Montross*, 923 F.2d 353 (5th Cir. 1991). We agree. Thus, we consider only section 1823(e) and *D'Oench* in determining whether the trial court erred in granting RTC's motion for summary judgment.

We note that RTC, as plaintiff, does not assert *D'Oench* and section 1823(e) as *grounds* to support its motion for summary judgment to recover the balance due on the note. Instead, RTC relies on section 1823(e) and *D'Oench* to preclude Stiles' affirmative defenses.

The *D'Oench* doctrine is a common-law rule of estoppel precluding a borrower from asserting against RTC defenses based on agreements not established in the financial institution's records. *Resolution Trust Corp. v. Murray*, 935 F.2d 89, 93 (5th Cir.1991). The essence of the rule is that RTC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records which set forth the rights and obligations of the bank and those to whom the bank lends money. Even borrowers who are innocent of any intent to mislead banking authorities are covered by the doctrine if they lend themselves to an arrangement which is likely to do so. *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248 (5th Cir.1990) (citing *Bell & Murphy & Assocs. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753–54 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990)). The doctrine thus "favors the interests of depositors and creditors of a failed bank[,] who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Campbell Leasing, Inc.*, 901 F.2d at 1248 (quoting *Bell & Murphy & Assocs.*, 894 F.2d at 754).

Section 1823(e) codified and expanded the policy behind *D'Oench*. *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274 (5th Cir.1989). Section 1823(e) provides as follows:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver for any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1)–(4) (1989). The banking crisis attending the passage of FIRREA suggests that the United States Congress intended the requirements of section 1823(e) to be strictly followed in order to maintain the integrity of RTC as an insurer of federally insured deposits. *FDIC v. Wright,* 942 F.2d 1089, 1095 (7th Cir.1991) (pet. for cert. filed Nov. 27, 1991). Unless an agreement meets all four requirements of the statute, the agreement cannot be enforced against RTC. *See FDIC v. Langley,* 484 U.S. 86, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987).

Documents attached to RTC's motion for summary judgment detail how RTC acquired the note. These documents put Stiles on notice that he was defending against an entity protected by *D'Oench* and by section 1823(e). The summary-judgment record in this case reflects that Stiles realized the applicability of section 1823(e), because the affidavits attached to his response to RTC's motion for summary judgment track the language of section 1823(e)(3) and (4).

■ *D'Oench* and section 1823(e) limit the availability of certain defenses against RTC. Because the affirmative defenses of release, accord and satisfaction, and payment would defeat RTC's right, title, or interest in the note, those defenses are invalid against RTC unless all of the requirements of section 1823(e) are met. *See* 12 U.S.C. § 1823(e)(1)–(4). Once RTC established the elements of its claim to recover the balance allegedly due on the note, Stiles had the burden to raise a fact issue on every element of at least one of his affirmative defenses. RTC had no burden to negate them. *Brownlee,* 665 S.W.2d at 112. Because RTC was the plaintiff in this case, *D'Oench* and section 1823(e) imposed a burden on Stiles to demonstrate as a preliminary matter that he was not estopped from asserting his affirmative defenses. To meet this burden, Stiles had to show either that *D'Oench* and section 1823(e) were inapplicable to this case or

that their requirements had been met. We conclude that, to avoid summary judgment, Stiles, as a defendant asserting affirmative defenses that would defeat RTC's right, title, or interest in the note, had the burden on summary judgment to show that he was not estopped by *D'Oench* and section 1823(e) from asserting the affirmative defenses that he alleged. We next determine whether Stiles introduced summary-judgment proof to avoid summary judgment in RTC's favor.

Although affidavits attached to Stiles' summary-judgment response track the language of section 1823(e)(3) and (4), they do not mention the requirements set forth in subsections (1) and (2). Nothing in the summary-judgment record raises a fact issue on the existence of a document that would comply with all four requirements of section 1823(e). Rather, Stiles speculates that Old Hallmark's internal accounting records might show that the note had been written off its books. Even if Stiles proved that the note was written off Old Hallmark's books for accounting purposes, this is not a defense to RTC's cause of action. *See FDIC v. Fisher,* 727 F.Supp. 1306, 1310 (D.Minn.1989) (section 1823(e) not affected by write-down of note in bank's records; note retains all legal attributes pertaining to it before the devaluation; as a matter of law, the defendants may not rely on the bank's devaluation as a defense), *rev'd on other grounds,* 942 F.2d 1254 (8th Cir. 1991). Writing off a note on a bank's books does not amount to a release of liability or to an accord and satisfaction. Further, the internal accounting documents sought by Stiles would not support his affirmative defenses. Although the internal accounting records might be official, written records of Old Hallmark, there is no summary-judgment proof that those records would be signed or approved by the board of directors or the loan committee in the minutes as required by section 1823(e)(2) and (3). Thus, these records would not enable Stiles to prove his affirmative defenses as a matter of law or to raise a fact issue on his affirmative defenses.

Stiles contends that *D'Oench* and section 1823(e) are inapplicable here because the note was released prior to the failure of Old Hallmark and, therefore, was not an "asset" acquired by RTC. The note in Old Hallmark's files bears no notation that it had been paid, released, or otherwise discharged. Although affidavits submitted by Stiles state that the release of the note was approved by the board of directors or the loan committee in its minutes, Stiles did not offer the minutes as evidence. Stiles requested production of the minutes, and he never has alleged that RTC failed to produce them.[4] Thus, we assume that the minutes were in Stiles' possession and could have been submitted in response to RTC's motion for summary judgment if they, in fact, reflected such approval by the board of directors or the loan committee.

Stiles sought to depose Ikerd concerning a memo written by Ikerd stating that the note had been "written off" Old Hallmark's books. Even with the deposition testimony sought by Stiles, it remained incumbent upon Stiles to prove his defenses in accordance with section 1823(e) and *D'Oench*. Stiles never argued that the deposition might lead to discovery of a written agreement meeting all of these requirements. Further, reasonable notice must be served in writing by the party proposing to take a deposition. TEX.R.CIV.P. 200(2)(a). The notice must state the name of the deponent, the time and place of the taking of the deposition, and, if applicable, a designation of the documents or tangible things to be produced at the deposition. *Id.* Upon proof of service of notice to take a deposition, the witness is served with a subpoena directing him to appear for deposition. TEX.R.CIV.P. 201(1). If the deponent fails to appear after being served with proper notice, the discovering party may move for an order compelling an appearance. TEX. R.CIV.P. 215(1)(b)(2)(a). Nothing in the summary-judgment record shows that Stiles gave reasonable notice of his intent to depose Ikerd, that Ikerd was subpoenaed to appear for deposition, or that, after

reasonable notice, Ikerd failed to appear for deposition.

Stiles asserted the affirmative defenses of release, accord and satisfaction, and payment. A release and an accord and satisfaction necessarily would entail a shift in RTC's rights to recovery. As such, the claimed event must be memorialized in writing, executed, approved, and recorded in accordance with section 1823(e). RTC must be able to rely on the records of the failed bank, and such reliance would be defeated if seemingly unqualified notes were subject to undisclosed conditions. *Langley*, 108 S.Ct. at 401; *see FDIC v. Krause*, 904 F.2d 463, 466 (8th Cir.1990). As previously stated, Stiles has neither produced a written agreement that reflects a release or an accord and satisfaction and that meets all of the statutory requirements nor raised a fact issue as to the existence of such a document. Because Stiles failed to overcome the restrictions imposed by section 1823(e), his affirmative defenses of release and accord and satisfaction were barred as a matter of law.

■ As for Stiles' payment defense, Stiles did not file an account stating distinctly the nature of payment, and such is not so plainly and particularly described so as to give full notice of the character thereof. *See* TEX.R.CIV.P. 95 (a defendant desiring to prove payment must file with his plea an account stating distinctly the nature of such payment and the several items thereof). Stiles' plea should have specified what credits and offsets he relied on in asserting payment. *Rea*, 822 S.W.2d at 373. Stiles' failure to comply with rule 95 bars him from proving credits and offsets not admitted by RTC. *Id.* (citing *Harrison v. Leasing Assocs., Inc.*, 454 S.W.2d 808, 809 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ)); TEX.R.CIV.P. 95 (failure to specify items of payment bars a defendant from proving payment). We note that RTC was not required to specially except or to otherwise object to Stiles' defective plea.

---

**4.** Stiles complains only that RTC failed to produce Old Hallmark's internal accounting records.

*Rea,* 822 S.W.2d at 373 (citing *Harrison,* 454 S.W.2d at 809).

Stiles argues that Ikerd's affidavit does not support summary judgment because it is the controverted testimony of an interested witness. Ikerd's affidavit attached to RTC's motion for summary judgment stated that "all just and lawful offsets" had been applied to the amount due under the note. A memo written by Ikerd states that the "loan was written off in the Deerfield Development Settlement Agreement." Stiles asserts that these statements are conflicting and that they therefore tend to discredit or to impeach Ikerd. Stiles points to summary-judgment proof which he argues shows that he was released and that entries were made on Old Hallmark's books reflecting this transaction. As previously stated, a showing that the note was written off does not amount to showing a release. The write-off of a note for accounting purposes does not mean that no amount is due on the note. Thus, Ikerd's statement that all offsets had been made and his statement that the note had been written off are not inconsistent.

In summary, the internal accounting records of Old Hallmark, even if they reflected that the note had been written off, would not meet the requirements of section 1823(e). Thus, they would not assist Stiles in raising a fact issue to preclude summary judgment. Likewise, deposing Ikerd concerning whether the note had been written off Old Hallmark's books would not assist Stiles. RTC established as a matter of law each element of its cause of action. Stiles failed to raise a fact issue on one of his affirmative defenses. Thus, we conclude that the trial court did not err in granting RTC's motion for summary judgment. We overrule Stiles' eleven points of error.

The trial court's judgment is affirmed.