**Eugene SHOLDRA, M.D., Appellant,**

v.

**BLUEBONNET SAVINGS BANK, FSB, Appellee.**

**No. 2–92–266–CV.**

Court of Appeals of Texas, Fort Worth.

June 15, 1993.

Opinion Overruling Motion for Rehearing Aug. 24, 1993.

Lane, Ray, Getchell, Wilson, Donald H. Ray, Fort Worth, for appellant.

Jenkens & Gilchrist, Guy I. Wade, III, Dallas, for appellee.

Before HILL, C.J., and DAY and HICKS, JJ.

## OPINION

HILL, Chief Justice.

Eugene Sholdra, M.D., appeals from. a judgment on a promissory note in favor of Bluebonnet Savings Bank FSB, the appellee. Sholdra contends in a single point of error that the trial court erred by admitting certain records because they were based upon business records of Sentry Savings Association, a failed institution that was a predecessor of Bluebonnet, since the sponsoring witness testified she had no idea of how the records of Sentry were kept.

We reverse and remand because the trial court erred in admitting Bluebonnet's business records because the sponsoring witness did not testify that the information in the records was placed there at or near the time by, or transmitted from, a person with knowledge of that information.

Plaintiff's exhibit 11 involved a 2.2 million dollar note, while plaintiff's exhibit 12 involved a $105,000 note. Kimberly Scott testified that she is a deficiency analyst for Bluebonnet, with the responsibility to calculate deficiencies on foreclosed and charge-off properties. She said that in connection with her job duties at Bluebonnet she had examined the loan records of Bluebonnet, previously belonging to Sentry, that pertain to the loan transactions at issue in this suit.

She said that she is the co-custodian of those records. She identified plaintiff's exhibit 11 as a deficiency calculation worksheet used at Bluebonnet to determine the amounts owing on deficiency. She said that it was made at or near the time by, or from information transmitted by, a person with knowledge of the delinquent condition of the 2.2 million dollar note. She related that it is kept in the course of a regularly conducted business activity of Bluebonnet, and that it is Bluebonnet's regular practice to make a data compilation of the type contained in the exhibit.

Ms. Scott identified exhibit 12 as a charge-off worksheet used to calculate a charge-off balance. She testified that it was made at or near the time by, or from information transmitted by, a person with knowledge of the delinquent condition of the $105,000 note. She said that the exhibit was kept in the course of a regularly conducted business activity of Bluebonnet. She indicated that it was a regular business practice of Bluebonnet to make a data compilation of the type contained in the exhibit. Although she indicated that the preparation of such a document was something ordinarily done anyway, she acknowledged that she had been instructed to prepare it a week earlier in connection with the upcoming trial. She said that it was prepared in order to bring the amount owed on the note up to date so that Bluebonnet could provide the court a current amount due and owing. She indicated that Bluebonnet had prepared prior deficiency worksheets on the note.

Rule 803(6) of the Texas Rules of Civil Evidence provides that certain records are not excluded by the hearsay rule, even though the declarant is available as a witness, if the testimony of the custodian or other witness shows the record was made at or near the time by, or from information transmitted by, a person with knowledge; if kept in the course of a regularly conducted business activity; and if it was the regular practice of that business activity to make the record, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. TEX.R.CIV.EVID. 803(6).

■ We hold that the exhibits were not admissible because Ms. Scott did not verify that the information contained in the records was made at or near the time by, or from information transmitted by, a person with knowledge. Instead, what she testified was that the exhibits were made at or near the time by, or from information transmitted by, a person with knowledge of the delinquent condition of the notes. A person with knowledge of the delinquent condition of the notes is not the same as a person who has knowledge of the informa-

tion that is contained in the underlying records or in the report. Because Ms. Scott failed to show that the information in the report came from someone with knowledge of that information, she failed to establish the necessary predicate for the introduction of a business record in accordance with rule 803(6) of the Texas Rules of Civil Evidence.

Bluebonnet relies on the cases of *Jones v. Resolution Trust Corp.*, 828 S.W.2d 821 (Tex.App.—Fort Worth 1992, writ denied); *Waite v. BancTexas–Houston, N.A.*, 792 S.W.2d 538, 540–41 (Tex.App.—Houston [1st Dist.] 1990, no writ); and *Duncan Development, Inc. v. Haney*, 634 S.W.2d 811 (Tex.1982). We find these cases to be distinguishable.

In *Jones*, a summary judgment case, the bank officer supporting the records testified by affidavit that the records "are prepared and maintained in the regular course of ... business by individuals who have personal knowledge of the facts set out therein." *Jones*, 828 S.W.2d at 824.

In *Waite*, also a summary judgment case, we do not have sufficient information concerning the bank officer's affidavit to be able to compare it to the affidavit in this case. The only thing we know is that the officer in that case, as well as in this case, became affiliated with the bank following the foreclosure involved in that case. The court held that the fact that he did not work at the bank at the time of the disclosure sale did not disqualify his testimony. There was no discussion in the court's opinion as to whether he had testified that the facts in the records were regularly kept by the bank based upon information from someone with personal knowledge. *Waite*, 792 S.W.2d at 540.

In *Duncan Development*, evidence at trial showed that the business records of a contractor included a summary of the work, services, and materials furnished by the contractor's many subcontractors on a construction project. The Texas Supreme Court upheld the admission into evidence of the summary, noting that there was testimony that the contractor's employees that made the subcontractor's invoices part of

the contractor's records had personal knowledge as to whether the invoices were proper for payment. *Duncan Development,* 634 S.W.2d at 814.

Bluebonnet urges that Dr. Sholdra waived any hearsay objection to plaintiff's exhibit 12 because he did not make a hearsay objection to the exhibit until after it had already been admitted.

After Ms. Scott had testified concerning plaintiff's exhibit 12, Dr. Sholdra objected to the admission of the exhibit, contending that since it was not prepared in the ordinary course of business, but, instead, was specifically prepared for litigation purposes, it did not meet the "business requirements—business records." At that point Bluebonnet's counsel interrupted Dr. Sholdra's objection. After the trial court had overruled the objection and admitted the exhibit, and Ms. Scott was answering questions from the document, Dr. Sholdra's counsel stated that he wanted to make sure the court understood that he had a hearsay objection to all of the calculations. The trial court overruled that objection as well.

■ We believe that Dr. Sholdra's first objection to plaintiff's exhibit twelve was sufficient to apprise the court that he was objecting to exhibit 12 because it did not meet the requirements as being kept in the course of a regularly conducted business activity as required by rule 803(6) of the Texas Rules of Civil Evidence. Inasmuch as rule 803 consists solely of evidence not excluded by the hearsay rule, we think that an objection that one did not meet the requirements of that rule could only be construed as a hearsay objection. Consequently, we hold that Dr. Sholdra did make his hearsay objection to the admission of plaintiff's exhibit 12 before the trial court admitted the exhibit into evidence. We sustain Dr. Sholdra's sole point of error.

We reverse the judgment and remand for trial.

## OPINION ON REHEARING

■ Bluebonnet Savings Bank, FSB argues for the first time on its motion for rehearing that Texas trial courts are required to admit otherwise inadmissible hearsay into evidence if it is a document that was acquired by the offering party as part of an Acquisition Agreement with the Federal Savings and Loan Insurance Corporation. Bluebonnet relies on the *D'Oench, Duhme* doctrine as enunciated by the United States Supreme Court in the case of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Bluebonnet additionally relies on the cases of *Stiles v. Resolution Trust Corp.,* 831 S.W.2d 24, 27 (Tex.App.—Dallas 1992, no writ); *Resolution Trust Corp. v. McCrory,* 951 F.2d 68, 71 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992); *Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013, 1015 (5th Cir.1990); and *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 380–81 (5th Cir.1990).

The *D'Oench, Duhme* doctrine protects purchasers in such an Acquisition Agreement from secret agreements that are not part of the official record of the depository institution. *D'Oench, Duhme & Co.,* 315 U.S. at 461, 62 S.Ct. at 681, 86 L.Ed. at 964. We have examined all of the cases cited by Bluebonnet and find that none is authority for Bluebonnet's expansion of the doctrine to the effect that Texas courts must admit the official records of such institutions into evidence, although they are hearsay, without the offering party authenticating the documents as required by TEX.R.CIV. EVID. 803(6).

We further note that Bluebonnet states in its motion for rehearing that the sponsoring witness, Ms. Scott, testified that the document that Bluebonnet sought to introduce was made at or near the time by, or from information transmitted by, a person with knowledge of the facts set out therein. It does not give any citation to the record as to where she so testified. In fact, as we noted in the original opinion, she did not so testify and that is the basis for the opinion. If we were in error in stating that she did not so testify, Bluebonnet should give us the citation to the record as to where such testimony is located.

We overrule Bluebonnet's motion for re-hearing.