# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00111-CV

**Whacep, Inc. d/b/a/ Potts Company, Appellant**

**v.**

**Congress Financial Corp., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN100021, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial in a collection case. Appellee Congress Financial Corporation (ACongress@) brought suit against Whacep, Inc. d/b/a/ Potts Company (AWhacep@) to recover the price of an inventory of vinyl floor tile. Congress was awarded $21,424.14 for breach of contract, interest, attorney=s fees, and court costs. Whacep appeals by three issues: (1) Congress was erroneously allowed to recover on an unpleaded cause of action; (2) certain business records were improperly admitted; and (3) the trial court=s filing of findings of fact and conclusions of law was tardy thereby preventing Whacep from obtaining necessary findings on its counterclaims. We will affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

This case involves vinyl composition floor tile which was manufactured by Kentile, Inc., for which Whacep was a regional distributor. In March 2000, Kentile went out of business leaving a substantial amount of its tile in the inventories of its distributors. Whacep alleges that with the manufacturer out of business the tile became worthless because replacement tile could not be obtained and the manufacturer=s warranty was no longer viable. Congress was Kentile=s finance company; it bought Kentile=s accounts receivable through a Afactoring agreement.@ When Kentile went out of business, Congress seized Kentile=s accounting records. Congress sued Whacep to recover the amount of Whacep=s outstanding account with Kentile.

Whacep counterclaimed contending that Kentile had fraudulently induced Whacep to continue buying its product so that Kentile could empty its accumulated inventory. Whacep alleged that even though Kentile knew that it ceased production of vinyl composition tile, Kentile told its distributors that it was merely Aretooling@ and would be resuming production, thereby fraudulently inducing its distributors to continue purchasing its remaining inventory of tile. Whacep alleged that it purchased a substantial amount of the tile, in reliance on Kentile=s inducement, that it was unable to sell. In addition to its fraud claim, Whacep alleged that Kentile breached the manufacturing warranty contained in the distribution agreement between Kentile and Whacep. Whacep also asserted that it properly revoked its acceptance and properly rejected the goods within a commercially reasonable time under the circumstances pursuant to the Uniform Commercial Code. *See* Tex. Bus. & Com. Code Ann. arts. 2.608, .711, .714-15 (West 1994).

The factoring agreement between Congress and Kentile represented an ongoing financing arrangement whereby Congress loaned to Kentile as much as six million dollars against its accounts receivable. The financing regime provided for a revolving loan, a term loan, and letters of credit. In connection with the revolving loans, Congress agreed to loan Kentile:

(i) seventy (70%) percent of the Net Amount of Eligible Accounts; provided, however, after 270 days from the date hereof, Lender shall re-evaluate Borrower=s Accounts and to the extent that accounts receivable turnover, dilution and other accounts receivable performance measures chosen at Lender=s sole discretion are satisfactory to Lender, Lender will consider in its sole discretion increasing the foregoing percentage to eighty (80%) percent of the Net Amount of Eligible Accounts, plus

(ii) the lesser of: (A) the sum of fifty (50%) percent of the Value of Eligible Inventory consisting of finished goods and raw materials for such finished goods, and (B) $2,000,000, less

(iii) the sum of: (A) any Available Reserves and (B) the Permanent Reserve.

(Emphasis in original.) Kentile agreed to pay interest monthly at a rate of 1.5 percent above prime rate.

The factoring agreement contained a power-of-attorney from Kentile to Congress authorizing Congress to act on behalf of Kentile in collecting any account financed by Congress. Congress was authorized to sue in its own or in Kentile=s name. The agreement also gave Congress the right of access to Kentile=s records at all times.

The district court filed findings of fact and conclusions of law with respect to Congress=s claim against Whacep. However, the court filed no findings of fact or conclusions of law regarding

Whacep=s counterclaims. The court=s judgment denied all relief not expressly granted. Whacep filed a motion to vacate and correct the judgment and a motion for new trial which were denied. Whacep appeals.

## DISCUSSION

**Breach of Contract**

Whacep=s first issue complains that the district court allowed Congress to proceed to trial on an unpleaded breach-of-contract claim. On the day of trial, the court sustained Whacep=s objection to Congress=s failure to verify its sworn-account pleading, but the court allowed Congress to proceed on a breach-of-contract theory. Whacep objected, arguing that Congress=s petition did not sufficiently plead a breach-of-contract cause of action. However, Whacep did not file special exceptions to bring any alleged pleading defects to the court=s attention. *See* Tex. R. Civ. P. 90, 91. Whacep argues its failure is excused because it had no notice that Congress was asserting a breach-of-contract claim.

Paragraph III of Congress=s second amended petition is entitled ASuit on Account and Breach of Contract.@ The petition alleges that it is:

> founded on an open account or other claim for goods, wares and merchandise, including a claim for a liquidated money demand based upon written contract . . . . Pursuant to the agreement Kentile physically delivered the goods to Defendant in Austin, Texas . . . Defendant has never paid the purchase price of the tile, despite written demand. This is a breach of contract.

In Texas, the standard for pleading is Afair notice.@ *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). A petition is sufficient if it gives the defendant Afair and adequate notice@ of the facts upon which the pleader bases its claim. *Id.* (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982));

4

*see also Howell v. Mauzy*, 899 S.W.2d 690, 707 (Tex. App.СAustin 1994, writ denied) (noting that pleadings will be construed to do substantial justice in accordance with Texas Rule of Civil Procedure 45). The standard is whether the pleading gives the opposing party sufficient information to enable it to prepare its defense thereto. *Id.* We hold that Congress=s pleading gave Whacep fair notice of the breach-of-contract cause of action.

Furthermore, Whacep=s failure to specially except to Congress=s petition waived any error. *See* Tex. R. Civ. P. 90. Without special exceptions, a petition will be liberally construed in favor of the pleader. *Auld*, 34 S.W.3d at 897; *Roark*, 633 S.W.2d at 809. Whacep complains in particular that Congress=s pleading fails to allege a standard of causation for the breach of contract claim. Although a pleading may omit an essential element of a cause of action, courts will uphold the pleading if the defect is not raised by special exception. *See Roark*, 633 S.W.2d at 809. The district court did not err in proceeding on Congress=s contract claim over Whacep=s objection. The first issue on appeal is overruled.

**Business Records**

By its second issue, Whacep complains of the district court=s admission of documents as business records. Whacep does not specify the documents to which its complaint is directed. It complains only about the district court failing to sustain its objection. Despite the fact that Whacep failed to clearly articulate its complaint on appeal, we have reviewed the record and determined that Whacep objected to the admission of three exhibits identified as PX2, PX3, and PX4. Exhibit PX2 is a copy of a Kentile report entitled, AAged Receivables@ which is dated Aas of@ July 31, 2000. The report reflects tile in the amount of

5

$21,424.14 was delivered to Whacep and remained unpaid for more than ninety days. Exhibits PX3 and PX4 are Kentile invoices showing delivery of the tile in question to Whacep.

Congress introduced its evidence through its vice president, Mark M. Galovic, Jr., who had responsibility within Congress for administering Kentile=s loans. He testified that the receivables-inventory loan provided Kentile with ongoing financing as it sold its product. He explained that Kentile would submit to Congress invoices reflecting purchases of its tile, then Congress would advance Kentile eighty percent of the receivable value of the tile. In return, the receivables collected went to Congress to be applied to Kentile=s loan. Galovic said that in the course of business between the parties he had daily contact with Kentile. Kentile would fax to Congress new invoices for its product on a daily basis and advise Congress of any receivable collections deposited. Each day Congress would obtain Kentile=s Adaily advance, which was their working capital funds.@ Congress obtained copies of Kentile=s invoices before it advanced Kentile any money toward the invoices. Kentile also provided Congress with monthly reports reflecting its accounts receivable and accounts payable reports, inventory reports and monthly financial statements.

Galovic testified that at the time Congress foreclosed on its loan to Kentile, he personally went to Kentile=s office and seized its records. He said that he was Congress=s custodian of Kentile=s records and that he obtained and kept those records in the regular course of Congress=s business. Galovic testified that the information in Kentile=s records was put there by persons with knowledge of the acts, events, conditions, opinions or diagnoses reflected in the records. He said that exhibits PX2, PX3, and PX4 were Kentile=s records which he kept in the regular course of Congress=s business.

6

Over Whacep=s objections, the exhibits were admitted based on the business-records exception to the hearsay rule. Tex. R. Evid. 803(6). Whacep argues that the documents were not admissible as business records because Congress did not generate the documents and its employee was not qualified to testify that the documents met the various requisites of proof necessary to qualify as a business record under the rules of evidence. *See id.*

The admission or exclusion of evidence is within the sound discretion of the trial court. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *Reliable Consultants, Inc. v. Jaques*, 25 S.W.3d 336, 345 (Tex. App.CAustin 2000, pet. denied). To establish error, one must show that the trial court abused its discretion, that is the trial court acted without reference to any legal rules or principles. *See Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 876 (Tex. App.CAustin 2001, no pet.). Moreover, an error in the admission of evidence is subject to the harmless-error rule; error can only result in reversal of the judgment if it probably resulted in an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Thus, an appellant must show that the judgment turned on the challenged evidence. *GT & MC, Inc. v. Texas City Ref., Inc.*, 822 S.W.2d 252, 257 (Tex. App.CHouston [1st Dist.] 1991, writ denied).

Records of regularly conducted businesses or activities are excepted from the general rule prohibiting admission of hearsay. Tex. R. Evid. 803(6). Documents qualify for the business-records exception if the party offering them shows that the records were generated pursuant to a course of regularly conducted business activity and that the records were created by or from information transmitted by a person with knowledge of that information, at or near the time of the event. *Id.* The rationale for the

7

exception is that business records are considered to have a high degree of trustworthiness, and the necessity of admitting them and the inconvenience of having each person who contributed to a document personally testify far outweigh any countervailing risks. Olin Guy Wellborn III, *Hearsay*, *in* Texas Rules of Evidence Handbook 725, 798 (Cathleen C. Herasimchuk ed., 4th ed. 2001).

Whacep cites as authority *Sholdra v. Bluebonnet Savings Bank, F.S.B.* as indicating that these invoices and records do not qualify as business records. 858 S.W.2d 533, 535 (Tex. App.CFort Worth 1993, writ denied). We find the facts in *Sholdra* distinguishable from those in this case. There, the sponsoring witness testified that she Ahad no idea how the records of [the preceding banking institution] were kept.@ *Id*. at 534. Here, Galovic testified that Congress was very involved on a daily basis with monitoring Kentile=s business operations. The financing arrangement between the companies required that Congress constantly monitor Kentile=s accounts receivable in order to perform its revolving inventory-financing function. Galovic testified that Congress would not extend any loan amount to Kentile until it had a copy of an invoice in hand. Congress was involved in and familiar with Kentile=s day-to-day operations and it was clearly in Congress=s financial interest to verify the contents of Kentile=s accounts receivable and invoice records.

In this case, both Whacep and Congress had a strong interest in the accuracy of the invoices. The income of both companies depended on the sale of the tile reflected in the invoices. Whacep does not deny that it received the tile reflected by the invoices and agreed to pay the stated price. There is no contention that the stated purchase price was inaccurate, although Whacep claimed offsets.

8

The sponsoring witness of a business record need not be the creator of the record or even an employee of the company keeping the record. *Houston Shell & Concrete Co. v. Kingsley Constrs, Inc.*, 987 S.W.2d 184, 186 (Tex. App.CHouston [14th Dist.] 1999, no pet.); *Huff v. State*, 897 S.W.2d 829, 839 (Tex. App.CDallas 1995, pet. ref=d). The sponsoring witness must show that he or others in his company Aknew of the events recorded on the third party documents.@ *Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 814 (Tex. 1982). Moreover, Whacep=s complaint assumes that these documents are Kentile=s business records, when they were actually admitted into evidence as Congress=s business records. *See Harris v. State*, 846 S.W.2d 960, 964 (Tex. App.CHouston [1st Dist.] 1993, pet. ref=d). Galovic was qualified to establish the business records predicate for Congress=s business records. Whacep=s second issue on appeal is overruled.

**Findings of Fact and Conclusions of Law**

By its third issue, Whacep argues that the district court committed reversible error when he filed its findings of fact and conclusions of law too late, thereby preventing Whacep from requesting additional findings regarding its counterclaims. This allegedly prejudiced Whacep because it was unable to fully present its complaints on appeal. The original final judgment was signed on November 27, 2001. Whacep timely filed its request for findings of fact and conclusions of law on December 3, 2001, and its notice of past due findings of fact and conclusions of law on December 26, 2001. *See* Tex. R. Civ. P. 296, 297. On January 4, 2002, the district court requested that Congress draft and submit findings and conclusions.

9

On January 30, 2002, the district court signed a corrected judgment, which changed the amount of damages awarded. No request for findings and conclusions was filed in response to the corrected judgment. On May 8, 2002, the district court signed findings of fact and conclusions of law, and on May 13, the court signed amended findings and conclusions. The record indicates that Whacep did not file a request for additional or amended findings and conclusions.

In order to complain about a trial court=s failure to make a finding of fact or a conclusion of law, an appellant must have requested additional or amended findings and conclusions within ten days after the court filed its findings and conclusions. Tex. R. Civ. P. 298. The failure to request additional or amended findings constitutes waiver of the trial court=s failure to make specific findings. *See Robles v. Robles*, 965 S.W.2d 605, 611 (Tex. App.CHouston [1st Dist.] 1998, pet. denied); *McDuffie v. Blassingame*, 883 S.W.2d 329, 337 (Tex. App.CAmarillo 1994, writ denied).

Whacep argues by implication that it was impossible to timely request additional findings on its counterclaims because of the district court=s tardiness in filing its findings and conclusions. It argues in its brief that the district court=s tardy findings prevented it from requesting additional findings because the Atrial court lost plenary power by the filing of the notice of appeal.@

We hold that the district court=s plenary power was still in effect when the district court filed its findings and conclusions on May 8 and 13, so that Whacep could have requested additional findings. Contrary to Whacep=s argument, perfecting appeal by filing a notice of appeal does not terminate a trial court=s plenary power. *See* Tex. R. Civ. P. 329b(d), (e). Whacep appears to assume that because it filed no motion or request after the corrected judgment was signed, the district court=s plenary power ended

10

thirty days latter. However, the legal effect of Whacep=s previously filed request for findings and conclusions in connection with the original judgment, as well as a motion to vacate or correct the original judgment and a motion for new trial, was still applicable to the corrected judgment. *See* Tex. R. Civ. P. 329b. These previous filings operated to extend the trial court=s plenary power by ninety days after the corrected judgment was signed. See Tex. R. App. P. 26.1(a).

If prematurely filed, a motion for new trial or a request for findings of fact and conclusions of law extends the time for perfection of an appeal from a subsequently corrected judgment. *See* Tex. R. Civ. P. 306c; Tex. R. App. P. 27.1(a), 27.2, 27.3; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 282 (Tex. 1993); *Maddox v. Cosper*, 25 S.W.3d 767, 770-71 n.3 (Tex. App.CWaco 2000, no pet.) (holding motion to modify filed before corrected judgment extended time for perfection as long as substance of motion could be properly raised in connection with corrected judgment). Whacep=s December 3, 2001 request for findings and conclusions operated to extend both the appellate deadlines and the trial court=s plenary power for the subsequently signed corrected judgment. The filing of the notice of appeal did not cut off that plenary power.

Whacep cannot escape the requirement of having to request additional or amended findings of fact and conclusions of law. The district court still retained plenary power when he filed the first set of findings on May 8 and the second set on May 13, sixty-eight and seventy-three days after the corrected judgment, respectively. Whacep=s argument that it is excused from complying with this procedural requirement because of the district court=s loss of plenary power is without merit. Furthermore, a trial court is not prevented from filing additional or amended findings when its plenary power lapses. *Jefferson*

11

*County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 959 (Tex. App.CBeaumont 1994, writ denied) (AWe conclude that the expiration of the trial bench=s >plenary power= over its judgment does not affect or diminish the trial court=s ability to make and file amended findings of fact and conclusions of law.@); *see also Robles*, 965 S.W.2d at 610.  Whacep=s third issue on appeal is overruled.

## CONCLUSION

Having overruled Whacep=s issues, we affirm the district-court judgment.

_____

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed:   May 15, 2003

12